595 So.2d 1282 (1992)
GREAT SOUTHERN NATIONAL BANK
v.
McCULLOUGH ENVIRONMENTAL SERVICES, INC.
No. 89-CA-0161.
Supreme Court of Mississippi.
Decided January 8, 1992.
*1283 Kenneth Harmon, Gerald & Brand, Jackson, for appellant.
Erwin C. Ward, Stennett Wilkinson & Ward, James R. Mozingo, Edmonson Biggs Mozingo & Jelliffe, Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION
In this case, plaintiff-appellant Great Southern National Bank ("Bank") seeks recovery of the sum of $21,298 from defendant-appellee McCullough Environmental Services ("McCullough"). According to the Bank, McCullough had erroneously paid the sum to Clyde A. Trammell, president of Trammell Construction Company ("TCC") and Trammell-Pitts Construction Company ("TPC"), for services rendered under a construction contract. The Bank contends that McCullough's error derives from the fact that Trammell had assigned to the Bank  as security for a loan  the right to receive the proceeds of the contract. Thus, the Bank considers itself to be an assignee; Trammell, or TCC, the assignor; and McCullough the obligor or account-debtor.
The Bank adds that McCullough had notice of this assignment; yet, McCullough disregarded the assignment and paid Trammell the sum to which the Bank feels it was entitled as assignee. Therefore, the Bank concludes, McCullough should be deemed liable for knowingly violating the terms of the assignment.
To enforce its right as assignee, the Bank filed suit in the Hinds County Circuit Court. Upon conclusion of some discovery, the Bank and McCullough filed motions for summary judgment. McCullough's motion was based, in part, on such affirmative defenses as fraud and misrepresentation.[1] Judge James D. Bell found that triable issues of material fact existed and, thus, denied both motions and set the date for trial.
About a year later, the Bank and McCullough re-filed their motions for summary judgment; they based their motions on virtually the same evidence and arguments on *1284 which they based their earlier motions. This time, however, another judge considered the motions  Judge Charles Barber. Judge Barber granted summary judgment  in favor of McCullough. Judge Barber's one-page "ORDER" contains virtually no explanation for his decision; however, he seems to have accepted McCullough's allegation of fraud and misrepresentation.[2]
The Bank appealed and presented two issues for this Court's disposition:
1. Whether the consent of McCullough was a prerequisite to a valid assignment by TCC to the Bank of monies due to TCC under contract?
2. Whether the assignment was based on fraud or misrepresentation?
In view of the evidence and relevant law, these two issues are consolidated. The issue which this Court addresses is whether summary judgment was an appropriate vehicle for disposition of this case. This issue is resolved in the negative, and the case is reversed and remanded for a trial on the merits.

II. ANALYSIS: Whether Summary Judgment Was Appropriate?

A. Background and Parties' Contentions

1. Background
On September 29, 1986, Clyde A. Trammell and TCC (Trammel Construction Co.) borrowed $19,404.95 from the Bank  as evidenced by a "Renewal Note" signed by Trammell as "President" of TCC. On October 27, 1986, TPC (Trammel Pitts Construction Co.) borrowed $12,000 from the Bank  as evidenced by a "New Note" signed by Trammell as "President" and Horace L. Pitts as "Vice President/General Manager" of TPC. The "New Note" includes the following express provision of collateral: "Assignment of contract between McCullough Environmental Services, Inc. and Trammell Construction Company, Inc." (hereinafter "M-T Contract"). This assignment is further evidenced by an "Hypothecation Agreement"  signed by Trammell as "President" of TCC. The Bank informed McCullough of the assignment by mailing McCullough a cover letter and a copy of the document. McCullough admits that it received this mailing and subsequently discussed the assignment with the Bank's former commercial loan officer, Lester L. Bellah, "a couple of times" via telephone. But McCullough disregarded the assignment and, on December 4, 1986, issued a $21,298 check under the M-T Contract to Trammell. The Bank contends that McCullough's decision to issue the check violated the terms of the assignment. That is, the Bank (as assignee) assumed the rights of TCC (as assignor) and, therefore, the Bank (not TCC) was solely entitled to receive payment of proceeds from McCullough (account-debtor or obligor) under the M-T Contract.[3] McCullough's alleged violation of the Bank's alleged right is the focus of this suit.

2. McCullough's Contentions
As noted, McCullough admits that it received notice of TCC's assignment of the M-T Contract; McCullough additionally admits that it issued the check for $21,298 to Trammell. Vol. II, at 355-57. However, McCullough asserts that recovery is barred because contractual rights may not be enforced "where the instrument contains fraudulent and material misrepresentations and the party seeking relief [i.e., the Bank] ... is guilty of either actual or legal fraud." McCullough explains that fraud or misrepresentation is evidenced by documentation and the "undisputed testimony" of Bellah. This documentation and testimony allegedly reveal that:
On or just prior to October 27, 1986, Mr. Bellah, the [Bank's] loan officer, Mr. Horace L. Pitts and Mr. Clyde A. Trammell discussed the new proposed $12,000 loan by appellant Bank. It was explicitly *1285 understood [among] all three of these individuals at this meeting that the $12,000 loan could not be set up in the name of TCC, [a legitimate and licensed] Mississippi corporation, because that corporation was then known to be in serious financial trouble with pending lawsuits filed against it and with at least one judgment having already been enrolled against it. The record verifies that this was, in fact, the situation at that time.
Mr. Bellah was aware on October 27, 1986, that Horace L. Pitts had no connection with, nor any authority to act for or on behalf of TCC, the legitimate corporation.
With [the Bank's] full knowledge of the true facts, Horace L. Pitts, along with Clyde A. Trammell, both acting as purported corporate officers of the maker, executed a purported corporate note in the amount of $12,000 on October 27, 1986. This note was set up by Mr. Bellah in the name of a totally fictitious and non-existent corporate entity styled "Trammell Pitts Construction Co., Inc." Trammell Pitts Construction Co., Inc. was not then, nor has it ever been, a corporate entity. Mr. Bellah was aware of the fact at all times relevant that Trammell Pitts Construction Co., Inc. was not a corporation.
... .
With this background of information, the [Bank's] loan officer nevertheless deliberately and with full knowledge of the true facts set up the $12,000 note .. . in the name of this fictitious corporate maker styled "Trammell Pitts Construction Co., Inc." for the unquestioned purpose of avoiding making the Bank's loan in the name of the existing financially troubled corporation [TCC].
To legitimize, on the surface at least, this newly conceived and intentionally fabricated corporate maker, the [Bank's] loan officer caused all of the [Bank's] loan documents to falsely represent this fabricated corporate entity to be a valid and legally existing Mississippi corporation.[4]
Appellee's Brief at 4-10 (citations to Record omitted).
In addition to its contention that fraud and misrepresentation bars recovery, McCullough contends that the Bank is barred from recovery "because the alleged assignment of [the M-T Contract] by [TCC] is prohibited without the written consent of the defendant [McCullough] under the terms and conditions of that certain contract between the defendant ... and [TCC]." McCullough cites the following provision for support of its contention:
[M-T] CONTRACT

Standard Form of Agreement Between Contractor and Subcontractor
... .
11.1.2 The Subcontractor [TCC] shall not assign this [C]ontract without the written consent of the Contractor [McCullough], ...
Vol. I, at 75.

3. The Bank's Contention
First, the Bank emphatically denies McCullough's contention that it committed a fraudulent act by providing a documented loan to a fictitious corporation (TPC). The Bank explains that, even though "there is neither a Mississippi corporation nor a foreign corporation qualified in Mississippi with that name [TPC]," TPC is simply "a trade name which TCC sometimes used in conducting its business":
This fact is reflected in the TCC bankruptcy proceedings, being U.S. Bankruptcy Court Case No. 87-00647, which is styled "In Re Trammell Construction Company, Inc. A/K/A Trammell Pitts Construction" (emphasis added). In the Statement of Financial Affairs for Debtor, which was signed under penalty *1286 of perjury by Clyde A. Trammell, he answered Question No. 1(a) as follows:
Q: 1. Nature, location, and name of business

a. Under what name and where do you carry on your business?
A. Trammell Construction Company, Inc. a/k/a Trammell Pitts Construction, 150 Excell Drive, Pearl, Mississippi 39208.
The answer to Question No. 7 concerning the financial accounts of the corporation lists one bank account at Great Southern National Bank under the name "Trammell Construction Company, Inc." and account under the name "Trammell-Pitts Construction." Furthermore, these bankruptcy proceedings repeatedly and consistently identify Trammell Construction Company as doing business under the trade name "Trammell-Pitts Construction."
Therefore, contrary to Defendant's assertion, TCC and TPC are not separate and distinct legal entities. TPC, in fact, is not a legal entity at all, but is merely a trade name under which TCC occasionally conducted its business. There was one and only one legal entity, and that was the corporation, [TCC]. At times, TCC borrowed money from Great Southern National Bank under the corporate name, as evidenced by the September 29, 1986, Note in the amount of $19,404.95. At other times, TCC borrowed money from the Bank under its trade name, [TPC], as evidenced by the October 27, 1986, Note in the amount of $12,000.00. In both instances, Clyde A. Trammell signed as President. Both indebtednesses, thus, are liabilities of [TCC].
Vol. IV, at 756-57.
With regard to McCullough's second contention that its consent was required in order to effectuate an assignment of the M-T Contract's proceeds, the Bank counters with its own citation to a particular contractual provision:

[M-T] CONTRACT

Standard Form of Agreement Between Contractor and Subcontractor
... .
11.1.2 The Subcontractor [TCC] shall not assign this [C]ontract without the written consent of the Contractor [McCullough], nor subcontract the whole of this Subcontract without the written consent of the Contractor, nor further subcontract portions of this Subcontract without written notification to the Contractor when such notification is requested by the Contractor. The Subcontractor shall not assign any amounts due or to become due under this [C]ontract without written notice to the Contractor.

Vol. I, at 75 (emphasis added by the Bank). The Bank construes the foregoing provision accordingly:
This provision prohibits the Subcontractor, TCC, from assigning or subcontracting the work to be performed under the [M-T Contract] without the written consent of the Contractor, [McCullough]. The [M-T Contract], however, allows the assignment of "any amounts due or to become due" under the [M-T Contract] as long as TCC gives written notice of such assignment to [McCullough].
The logic of the above provision is obvious. A contractor certainly does not wish to allow its subcontractor to assign the contract, and thus the performance of the work, to a third party without the prior approval and consent of the contractor. The contractor has entered into a personal contract with the specific subcontractor based on its experience, expertise, and reputation. The contractor, thus, wants the specific subcontractor, not some unknown third party, to perform the work required under the subcontract. The payment of monies due under the subcontract, however, is a totally different matter. The contractor merely wants written notice that the subcontractor has assigned the amounts due under the contract. Consent to such an assignment is not required.

B. Judge Barber's Decision
After examining virtually the same evidence which Judge Bell had examined, *1287 Judge Barber concluded "that there is no genuine issue as to any material fact on any relevant issue, including misrepresentation, fraud and lack of honesty in fact, and therefore, the defendant, McCullough Environmental Services, Inc., is entitled to summary judgment as a matter of law."

C. Relevant Law and Disposition

1. Summary Judgment: The Procedure
The construction and enforcement of the provisions of Rule 56, regarding summary judgment procedure, have been amply discussed in a plethora of cases and need not be repeated here. See generally Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983), and its progeny. In short, summary judgment is appropriate when no triable issue of material fact exists. Cunningham v. Lanier, 589 So.2d 133, 134 (Miss. 1991).

2. Assignment of Contractual Rights: A General Overview

(a) Assignee "Stands in Shoes" of Assignor
Mississippi law permits an assignment of contractual rights. Board of Trustees of State Institutions of Higher Learning v. Peoples Bank of Miss., 538 So.2d 361, 366 (Miss. 1989); see also Merchants & Farmers Bank of Meridian v. McClendon, 220 So.2d 815, 821 (Miss. 1969) ("The general rule is that the right to receive money due or to become due under an existing contract may be assigned.") (citing Restatement of Contracts § 151 (1932)). Assigned contractual rights may be enforced by the assignee  who essentially "stands in the shoes" of the assignor and who "takes no rights other than those" which the assignor had possessed.[5]Indian Lumbermen's Mut. Ins. Co. v. Curtis Mathes Manufacturing Co., 456 So.2d 750, 755 (Miss. 1984); see also International Harvester Co. v. Peoples Bank & Trust Co., 402 So.2d 856, 861 (Miss. 1981) ("It has long been held that a valid assignment of a debt or contract conveys the entire interest of the assignor to the assignee, and thereafter the assignor has no interest therein."); 6A C.J.S. Assignments § 73, at 710-12 ("As a general rule, a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in the thing assigned, but not to confer upon the assignee any greater right or interest than that possessed by the assignor.").

(b) Assignee Must Provide Adequate Notice
Pursuant to Miss. Code Ann. § 75-9-318(3) (1972), the account-debtor or obligor must be provided adequate notice of the assignment:
(3) The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does to the account debtor may pay the assignor.
Because the Mississippi Legislature has adopted the Uniform Commercial Code (UCC), perusal of the official "Comments" to the corresponding UCC section would shed further light on the notice requirement:
Subsection (3) clarifies the right of account debtor to make payment to his seller-assignor in an "indirect collection" situation (see Comment to Section 9-308). So long as the assignee permits the assignor to collect claims or leaves him in possession of chattel paper which does *1288 not indicate that payment is to be made at some place other than the assignor's place of business, the account debtor may pay the assignor even though he may know of the assignment... .
... .
Subsection (3) requires reasonable identification of the account assigned and recognizes the right of an account debtor to require reasonable proof of the making of the assignment and to that extent validates such requirements in contracts or purchase order forms. If the notification does not contain such reasonable identification or if such reasonable proof is not furnished on request, the account debtor may disregard the assignment and make payment to the assignor.
U.C.C. § 9-318, Comments 3 & 5 (1972).
As explained by the New Mexico Supreme Court:
The [Uniform Commercial] Code does not require any particular language to be used in directing payment to the assignee. One purpose for the provision requiring notice that "payment is to be made to the assignee" is to allow for commercial situations where accounts are used as collateral to secure a loan repayment. In such cases, the borrower often retains the right to collect the accounts, and the assignee's rights of collection ripen only upon default by the borrower. Such a transaction is referred to as an "indirect collection."
First Nat'l Bank v. Mountain States Telephone & Telegraph Co., 91 N.M. 126, 571 P.2d 118, 120-21 (1977) (holding that account debtor could readily determine from assignment form (1) that assignee had purchased assignor's right to proceeds of work contract with account debtor and (2) that assignee was therefore entitled to be paid such proceeds) (citing 4 R. ANDERSON, UNIFORM COMMERCIAL CODE § 9-318, Comment 3 & § 9-308, Comment 1 (2d ed. 1971)). See Warrington v. Dawson, 798 F.2d 1533, 1536 (5th Cir.1986); First Trust & Sav'gs Bank of Glenview v. Skokie Fed. Sav'gs & Loan Ass'n, 126 Ill. App.3d 42, 81 Ill.Dec. 246, 248, 466 N.E.2d 1048, 1050 (1984); see also Shields v. Taylor & Tarpley, 25 Miss. (3 Cushm.) 13 (1852).

(c) Affirmative Defenses Are Available to Account-Debtor
Finally, an account-debtor has available to him or her various defenses against an assignee. See, e.g., Fall River Trust Co. v. B.G. Browdy, Inc., 346 Mass. 614, 195 N.E.2d 63, 64 (1964). In addition to the defense of failure to provide adequate notice, fraud and misrepresentation in the creation of an assignment may be asserted. This Court has not addressed assertion of this specific defense in cases involving an assignment, but other jurisdictions have. See, e.g., Daugherty v. Blaase, 191 Ill. App.3d 496, 138 Ill.Dec. 900, 902, 548 N.E.2d 130, 132 (1989) ("In the absence of fraud or bad faith, a claim assigned prior to judgment constitutes a sufficient potential claim to make the assignment valid."); 99 Pratt Street Corp. v. Stand Realty Corp., 27 Conn. Supp. 101, 230 A.2d 613, 614-15 (1966) (fraudulent "representation that defendant was a bona fide operating corporation authorized to do business in this state and was legally qualified in this state" could constitute a "good defense to assignee's claim" under assignment); cf. Franchise Tax Bd. v. McKean, 168 Cal. App.3d 970, 215 Cal. Rptr. 36, 39 (1985) (court finds evidence of fraud involved in assignment); In re Estate of Vought, 76 Misc.2d 755, 351 N.Y.S.2d 816, 820 (Surrogate Ct. 1973) ("defenses of usury, fraud and unconscionable contract preclude enforcement"); see also 6 Am.Jur.2d Assignments § 3, at 187-88 ("[O]nly those assignments which are ... free from elements of fraud ... are valid.").
In a case involving a contract but not an assignment, this Court noted that "[f]raud vitiates everything it enters into. The contract and notes which were the basis of this suit, having been procured by fraud, are void in all their provisions." J.A. Fay & Egan Co. v. Louis Cohn & Bros., 158 Miss. 733, 740, 130 So. 290, 292 (1930); accord Stand Realty Corp., 230 A.2d at 614.
And this Court has repeatedly held that a party alleging fraud or misrepresentation *1289 must prove the following elements by clear and convincing evidence:
(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.
See, e.g., Johnson v. Brewer, 427 So.2d 118, 121 (Miss. 1983). "This burden ... is a function of the degree of confidence we should have in the correctness of a factual determination that one has perpetrated a fraud." Anderson v. Burt, 507 So.2d 32, 38 (Miss. 1987) (emphasis added).

3. Application of Law
Application of law to the evidence  viewed in a light most favorable to the nonmovant (the Bank)  leads this Court to conclude that triable issues of material fact exist.
The most glaring issue of fact is whether the $12,000 loan transaction and assignment of rights under the M-T Contract involved fraud or misrepresentation. The trial judge seems to have concluded, without explanation, that no triable issue regarding this material fact exists. The evidence upon which the trial judge relied to reach this conclusion omits two of the three key witnesses involved in the loan transaction. Trammell and Pitts provided absolutely no testimony via deposition, affidavit, or some other means. The only witness to the transaction who provided testimony was Bellah. And Bellah testified via deposition: (1) that no fraud or misrepresentation was involved in the loan transaction/assignment of rights; and (2) that he considered TPC to be a legitimate trade name of TCC.[6] Vol. III, at 412-56. The record contains evidence which a fact-finder could deem to be supportive of Bellah's testimony. See, e.g., Vol. II, at 274 (photocopy of bankruptcy petition styled: In re Trammell Constr. Co., Inc. A/K/A/ Trammell Pitts Constr.).
In sum, McCullough failed to meet its burden of demonstrating that no triable issue of material fact exists. Indeed, McCullough has demonstrated that triable issues do exist  such as whether the facts or evidence support the allegation that fraud and misrepresentation were involved in the loan transaction/assignment of contractual rights. In an analogous case, a federal district judge concluded that an account-debtor's allegation that a bank's transactions involved fraud generated "a question of fact which this court cannot decide on a motion for summary judgment." Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank, 571 F. Supp. 489, 495 (D.C.N.Y. 1983) (citing cases for support). This Court has also alluded to the notion that cases which involve issues of contractual ambiguity and interpretation as well as allegations of fraud or misrepresentation generally are inappropriate for disposition at the summary-judgment stage. See, e.g., Pursue Energy Corp. v. Perkins, 558 So.2d 349, 354 (Miss. 1990) (citing cases for support). Clearly, this is one of those cases. Lanier, 589 So.2d at 134 ("The Court does not try issues on a Rule 56 motion; it only determines whether there are issues to be tried."). This case is reversed and remanded for a belated trial.

4. Afterword: Other Triable Issues Exist
Before concluding, other triable issues of material fact should be noted. For example, McCullough alleges that it did not receive adequate notice of the assignment; the Bank disagrees. Disposition of this legal issue requires disposition of various factual sub-issues: (1) What type of information about the assignment did the Bank provide McCullough via telephone? (2) Would a reasonable, prudent individual have understood this information which the Bank alleges should have sufficed to place McCullough on notice of the assignment? *1290 and (3) Did the Bank demand, as alleged, that any future payments of contractual proceeds be made only to the Bank? A Florida appellate court similarly concluded that summary judgment was improperly rendered since a factual issue existed as to whether the account-debtor acquired actual notice of the assignment. See Capital City Second Nat'l Bank v. Peavy & Son Constr. Co., 585 So.2d 1123, 1123-24 (Fla. App. 1991). An Illinois appellate court also concluded that the issue regarding the "reasonableness" of the notice "must be determined by the particular facts of each case" and, therefore, summary judgment is an inappropriate vehicle for disposition. See Municipal Trust & Sav'gs Bank v. Grant Park Community Dist. Number 6, 171 Ill. App.3d 289, 121 Ill.Dec. 449, 452, 525 N.E.2d 255, 258 (1988); see also Costanzo v. Monico, 248 N.J. Super. 116, 590 A.2d 268, 270-71 (1991).
Finally, the issue of consent, which McCullough raised in this case, may r equire disposition of material facts. See note 6, supra.

III. CONCLUSION
Clearly, summary judgment was inappropriate in this case. This Court therefore reverses and remands for a trial on the merits.
REVERSED AND REMANDED FOR TRIAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] McCullough also mentions lack of "clean hands," good faith or honesty in fact.
[2] The record contains no record of whether a hearing was held on the motions for summary judgment. Judge Barber did note in his written "JUDGMENT" that he "heard" arguments; however, he may have only been referring to the parties' submitted briefs.
[3] TCC defaulted on the loan from the Bank, so the Bank sought to collect the M-T Contract proceeds.
[4] The documents which McCullough cites as "falsely representing" Trammell Pitts Construction Company to be a "valid and legally existing Mississippi corporation" include: (1) the $12,000 "New Note"; (2) the Hypothecation Agreement; (3) a U.C.C. financing statement filed of record as public notice; and (4) other miscellaneous documents which were discovered in the Bank's loan file.
[5] Thus, a valid assignment may take effect notwithstanding the obligor's refusal to provide consent. Herzog v. Irace, 594 A.2d 1106, 1108 (Me. 1991) ("The assignment takes effect through the actions of the assignee and assignor and the obligor need not accept the assignment to make it valid."); but see Service Adjustment Co. v. Underwriters At Lloyd's London, 205 Ill. App.3d 329, 150 Ill.Dec. 243, 246, 562 N.E.2d 1046, 1049 (1990) (holding that summary judgment improperly rendered since "question of fact exists as to whether defendants consented to the partial assignment"). A contractual provision prohibiting an assignment may, however, invalidate an assignment.
[6] Whether the Bank actually believed that TPA was simply a trade name of TCC is clearly an issue for a fact-finder's determination.