645 So.2d 1340 (1994)
William David YOWELL and Donna Vaughn Yowell
v.
JAMES HARKINS BUILDER, INC., James Harkins, Cathy Harkins Hammond, John C. Wheeless, Jr., Trustee for First National Bank of Vicksburg, and First National Bank of Vicksburg.
No. 91-CA-0909.
Supreme Court of Mississippi.
December 1, 1994.
*1341 James H. Herring, Herring Long & Ward, Canton, for appellants.
K. Hayes Callicutt, Ken R. Adcock, Shell Buford Bufkin Callicutt & Perry, Jackson, for appellees.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
PITTMAN, Justice, for the Court:

STATEMENT OF THE CASE
On April 3, 1990, William and Donna Yowell filed a complaint in the Chancery Court of Madison County against James Harkins Builder, Inc.; James Harkins; Cathy Harkins Hammond; Robert B. Barnes; James C. Wheeless, Jr., Trustee for First National Bank of Vicksburg; and First National Bank of Vicksburg, alleging inter alia, that the Defendants participated fraudulently in the sale of a home to the Yowells, with full knowledge that a portion of the lot sold was designated a "floodway" and subject to continual and perpetual flooding. The complaint, in part, prayed for rescission, restitution and other relief.
Robert Barnes filed his separate answer on May 29, 1990. Harkins Builder, James Harkins and Cathy Harkins Hammond filed their answer on May 29, 1990. Wheeless and Bank of Vicksburg filed their respective answers on January 18, 1991.
On February 25, 1991, Harkins Builder, James Harkins and Cathy Harkins Hammond filed a motion to dismiss, pursuant to M.R.C.P. 11 & 12 and a motion for summary judgment pursuant to M.R.C.P. 56(b).
The Yowells on June 26, 1991, filed their response to the motions for summary judgment.[1]
A hearing on the motions for summary judgment was held on July 2, 1991, with all parties present.
By its statement from the bench and by Order dated July 2, 1991, the trial court granted summary judgment in favor of all Defendants. Thereafter, on July 12, 1991, the Yowells filed a motion to amend/alter the trial court's grant of summary judgment, pursuant to Miss.R.Civ.P. 59. The trial court, in turn, denied this motion on August 9, 1991.
Aggrieved by the lower court's grant of summary judgment, the Yowells perfected this appeal and present one issue for this Court's consideration:

WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF JAMES HARKINS BUILDER, INC.?
Harkins Builder, James Harkins and Cathy Harkins Hammond filed their brief together. Robert Barnes, Wheeless, and Bank of Vicksburg, are not parties to this appeal.

*1342 STATEMENT OF THE FACTS

On March 31, 1989, James Harkins Builder, Inc., filed for and received from the City of Madison, a permit to build a house on Lot 17, situated in part 2 of the Trace Cove subdivision.[2] The plat filed with the City of Madison showed the property to be within a flood plain and floodway area.[3]
Sometime prior to September, 1989, the Yowells met with James Harkins at Lot 17, within the Trace Cove subdivision, part 2, to discuss the details of a sale of that lot and a house under construction and situated on 164 Trace Cove Drive. Prior to meeting to execute the contract for sale, the Yowells noticed some pools of water in the backyard of the property and notified Harkins. Harkins, in turn relayed that the lot would be grazed to alleviate this problem.
On September 11, 1989, the Yowells met again with Harkins and also with Cathy Harkins Hammond to sign the contract for sale of the property.
The Yowells, on October 1, 1989, requested from Harkins, copies of the proposed closing papers, including the appraisal, survey, and deed of trust.
On October 5, 1989, the Yowells received copies of certain documents pertaining to the property from the Bank of Vicksburg. That same day, the Yowells again met with Cathy Harkins Hammond to go over certain closing documents. During the course of that meeting, and upon examination of the appraisal, the Yowells learned that the property was being surveyed to determine whether it was located within a federally designated flood plain. In addition, a copy of the Trace Cove subdivision plat (prepared by Robert B. Barnes) revealed that all lots within part 2 of the Trace Cove subdivision were actually situated within the designated flood plain. The Yowells further inquired about the effect of the notation on the appraisal concerning the flood plain and were told that the subject property was not within the designated flood plain and that flood insurance would therefore not be necessary.
The next day, Cathy Harkins Hammond contacted the Yowells to advise them that she had been mistaken as to Lot 17 being within the designated flood plain and therefore, flood insurance would indeed be required. However, she also relayed to the Yowells that Harkins would pay the flood insurance premiums. The Yowells had moved into the home by this time.
The sale and purchase of said property was consummated on October 12, 1989, with the Yowells paying Harkins the purchase price of $118.000.00, consisting of $26,000.00 down payment and $92,000.00 secured by a mortgage from First National Bank of Vicksburg, and Harkins delivering to the Yowells, a warranty deed conveying the subject property. In addition, the Yowells paid (as part of the $3,500.00 closing costs) the sum of $136.25 to Barnes for the preparation of the subdivision plat. Part of the contract for sale included a provision wherein Harkins Builder agreed to "fill in backyard and drain off properly." Pat Guess, an engineer chosen by the Yowells and hired by Harkins Builder, was later employed to render a professional opinion as to correcting the drainage problems.
On October 25, 1989, the Yowells discovered their yard and property covered with some three to four feet of water. They notified Harkins Builder of this fact and James Harkins responded that he would send someone to put down a load of dirt and hay.[4]
The Yowell's property flooded again on January 5, 1990, and they once more notified Harkins Builder and also Denson Robinson, the Public Works Director for the City of Madison. The Yowells learned from Robinson that their property was located in a *1343 "floodway" within the flood plain. In an affidavit, Robinson stated that the Yowell's home was constructed in accordance with all local and federal regulations. In addition, FEMA (Federal Emergency Management Agency) corresponded with the Yowells and confirmed that their home was not built within the floodway and that the City of Madison properly issued all permits.
After experiencing numerous additional episodes of their property flooding, the Yowells filed this suit to rescind the sales contract. In part, the Yowells alleged that Harkins Builder, James Harkins and Cathy Harkins Hammond fraudulently concealed existing knowledge of the fact that Lot 17 was within a "floodway" and that Cathy Harkins Hammond knew or should have known the location and condition of the lots within part 2 of the Trace Cove subdivision.
On appeal, the Yowells contend that the trial court committed reversible error in granting summary judgment as numerous material facts were in dispute concerning the alleged fraudulent concealment on the part of James Harkins and Cathy Harkins Hammond. Harkins and Hammond counter this argument by asserting that the Yowells failed to permit them to enter on the property in order to correct the drainage problems pursuant to the opinion rendered by Pat Guess. Harkins and Hammond further allege that the Yowells filed suit before permitting them to repair and rectify the drainage problems.[5]
After due consideration of all issues presented by this appeal, we find that there were questions of material fact in dispute which necessitate additional consideration. Therefore, we reverse and remand for a trial on the merits.

DISCUSSION OF THE LAW

Standard of Review for Summary Judgment
We employ a de novo standard of review in analyzing a lower court's grant of a summary judgment. Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63 (Miss. 1988).
This Court conducts a de novo review of orders granting or denying summary judgment and looks at all
the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant would be given the benefit of the doubt.
Mantachie Natural Gas District v. Mississippi Valley Gas Co., 594 So.2d 1170, 1172 (Miss. 1992) (emphasis added) (citations omitted).
This burden of proving that no disputed factual issues exist rests with the Appellees, and is one of production and persuasion, not of proof. Fruchter v. Lynch Oil Co., 522 So.2d 195, 198 (Miss. 1988). A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Miss.R.Civ.P. 56(c). To prevent summary judgment, the non-moving party must establish a genuine issue of material fact by means allowable under the Rule. Lyle v. Mladinich, 584 So.2d 397, 398 (Miss. 1991).
Finally, a motion for summary judgment should be overruled unless the trial court finds, beyond any reasonable doubt, that the plaintiff would be unable to prove any facts to support his claim. McFadden v. State, 580 So.2d 1210 (Miss. 1991). "[T]he *1344 Court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried." Brown v. Credit Center Inc., 444 So.2d 358, 362 (Miss. 1983).

The Lower Court's Findings
In two orders filed August 9, 1991, the lower court both granted Appellees' motion for summary judgment and overruled Appellants' motion to amend the final decree. There were no findings of fact made by the chancellor when he ruled from the bench, nor did the chancellor provide any analysis or comments. Likewise, there are no findings of fact contained in the lower court's final order; as such, this Court has nothing more than a naked ruling from which to proceed.
From the record of the hearing held on July 2, 1991, it is readily apparent that there were issues of material fact, thus precluding summary judgment.
First, there was dispute over whether the location of the property (or a portion thereof) was within the floodway. There also was question over whether or not Appellees were aware that a portion of the property was within the floodway at the time the sale was consummated and whether or not this alleged knowledge was concealed prior to the sale.
In Great Southern National Bank v. McCullough Environmental Services, Inc., 595 So.2d 1282 (Miss. 1992), this Court considered the issues of contractual interpretation, fraud and misrepresentation and reversed the lower court's grant of summary judgment. This Court discussed the elements required for proving fraud/misrepresentation:
[A] party alleging fraud or misrepresentation must prove the following elements by clear and convincing evidence:
(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on only by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

See, e.g. Johnson v. Brewer, 427 So.2d 118, 121 (Miss. 1983). `This burden ... is a function of the degree of confidence we should have in the correctness of a factual determination that one has perpetrated a fraud.'
Great Southern National Bank, 595 So.2d at 1289 (quoting Anderson v. Burt, 507 So.2d 32, 38 (Miss. 1987)) (emphasis in original).
This Court concluded "that triable issues of fact do exist  such as whether the facts or evidence support the allegation that fraud and misrepresentation were involved. ..." Great Southern National Bank, 595 So.2d at 1289 (emphasis in original). Further, "cases which involve issues of contractual ambiguity and interpretation as well as the allegations of fraud and misrepresentation generally are inappropriate for disposition at the summary-judgment stage." Id.
The present case involves issues of contractual interpretation, such as the effect of the provision in the contract for sale, wherein Appellees represented that they would "properly drain off" Appellant's backyard. In addition, there are allegations of fraudulent concealment, on the part of Appellees of existing knowledge that the property (or portion thereof) was located within the floodway. We find that such issues were proper questions for consideration on the merits.
Second, whether or not a portion of the property was located in the actual floodway (rather than the flood plain) was contested by the parties' respective witnesses. While certain witnesses determined that the eastern portion of the lot was within the floodway, others found the western portion of the lot to be within the floodway. Still other witnesses determined that none of the property was within the floodway. Among these witnesses were Robert Lunardini, Denson Robinson and Pat Guess, who observed the subject property, and rendered an opinion as to the location being in the floodway. In addition, Jerry D. Mask, an expert real estate appraiser also gave an opinion as to the marketability of the subject property. Because there appears to be conflicting evidence and testimony *1345 as to the location and marketability of the subject property and this was an issue of material fact, a finder of fact should consider the weight and worth of such testimony. See Daniels v. GNB, Inc. & Southern Battery Co., 629 So.2d 595, 602-03 (Miss. 1993) (citing Ford Motor Co. v. Cockrell, 211 So.2d 833, 837 (Miss. 1968)).
In Dennis v. Searle, 457 So.2d 941 (Miss. 1984), this Court considered the issue of ambiguities in contract interpretation and reversed the lower court's grant of summary judgment. "The interpretation of an unclear contract generally involves questions of fact sufficient so that our summary judgment procedure will be an inappropriate vehicle for final decision." Dennis, 457 So.2d at 945. This Court further stated:
Issues of fact, as a matter of proper construction of Rule 56, also exist where there is more than one reasonable interpretation that may be given undisputed testimony, where materially differing but nevertheless reasonable inferences may be drawn from the uncontradicted facts, or where the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial court cannot say with reasonable confidence that the full facts of the matter have been disclosed.
Id.
The case sub judice mirrors the above case as each of the parties interpreted the sales contract provision pertaining to the drainage of the property in a different manner. While the Appellants contend that the provision was not complied with, so that rescission was their only relief, Appellees argue that they were prevented from fully performing via actions by Appellants. Once more, this issue appears to be one for full consideration on the merits.
Because the foregoing issues are subject to different interpretations and the chancellor made no findings of fact in granting summary judgment to the Appellees, the order of summary judgment is hereby vacated and the case sub judice remanded for a trial on the merits.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
NOTES
[1] The requisite affidavits were submitted with the response.
[2] Madison issued the permit after obtaining the requisite Federal government approval.
[3] Because the property is located in the federally designated flood zone, no filling can be accomplished without first obtaining a 404 permit from the U.S. Army Corps of Engineers.
[4] In an affidavit, James Harkins stated that in December, 1989, his company constructed a drainage ditch in another attempt to alleviate the flooding problem. Harkins conceded that this did not totally alleviate the problem, so Pat Guess was hired to render a professional opinion.
[5] While Harkins Builders, James Harkins and Cathy Harkins Hammond together, filed a brief as Appellees, Trustee and Bank did not file a brief.