# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 16, 2009

Charles R. Fulbruge III
Clerk

No. 09-60433
Summary Calendar

JOE BELL; BILLY RAY BROWN; CLARKE DENTON; TONY DENTON; CHARLES DUBOSE; ROGER EASTERLING; CHRIS FORTENBERRY; ANGIE GAINEY; BRENDA GUY; LARRY HARRELL; JAMES MCINTOSH; RONNIE MILEY; HAROLD NELSON; WESLEY ODOM; CHARLES RAWSON; EDWARD G. SADOWSKI; MARY SESSUMS; C.H. THAMES; KEITH WARE; JOE MASSEY; RICKY BRATCHER,

Plaintiffs–Appellants,

v.

KOCH FOODS OF MISSISSIPPI, LLC,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:08-CV-697

Before GARZA, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Twenty-two poultry growers (the Growers) filed suit against Koch Foods of Mississippi, LLC, alleging that Koch breached its contracts with the Growers

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and violated the Packers & Stockyard Act (PSA), along with various state law claims. Subsequently, the district court denied the Growers' motion to allow arbitration-related discovery, granted Koch's motion to compel arbitration, and dismissed the suit. On appeal, the Growers argue that (1) the district court erred in denying their motion to allow arbitration-related discovery; (2) the arbitration agreements in the record are not evidence of an agreement to arbitrate because they were not properly authenticated; (3) the arbitration agreements are not valid because they were fraudulently procured; (4) the arbitration agreements are unenforceable because they are procedurally and substantively unconscionable; and (5) the arbitration clause in the agreements conflicts with the underlying purpose of the PSA. We affirm.

## I

The Growers, at various times, each entered into Broiler Growing Agreements or Breeder Hen Agreements with Koch. The Growers allege that Koch unilaterally and unlawfully ended its relationship and terminated contracts under which the Growers raised chickens on Koch's behalf, and that Koch's conduct amounted to a violation of the PSA. The Growers also allege Koch's conduct exhibited actionable state law claims for fraud, fraudulent concealment, and fraudulent misrepresentation.

The Growers filed suit in federal district court. Thereafter, Koch filed a motion to compel arbitration, pursuant to the arbitration clause that is contained in each of the agreements. The arbitration clause is identical in each of the agreements and provides that "ALL DISPUTES OR CONTROVERSIES ARISING UNDER THIS AGREEMENT, INCLUDING TERMINATION THEREOF, SHALL BE DETERMINED BY A THREE MEMBER ARBITRATION PANEL," in accordance with the rules and procedures of the American Arbitration Association. The findings of the panel are binding on the parties. The agreements provide that each party shall pay the costs associated

2

with one of the three arbitrators and that the parties shall share equally the costs associated with the third arbitrator. Also, "[i]n the event of a final adjudication by the panel, all fees, costs, and expenses incurred by the successful party as a result of the dispute, including attorney's fees and arbitrator fees, shall be bourn [sic] by the unsuccessful party." The clause also stipulates "that the business of raising, processing, and producing poultry products is extensively involved in interstate commerce," "that the Federal Arbitration Act is applicable to this agreement," and that the arbitration clause provides a complete defense to any proceeding before a court or administrative tribunal.

The district court denied the Growers' request for arbitration-related discovery, finding that the Growers had not made a compelling showing that discovery should be permitted. The district court also denied the Growers' request for a jury trial or a hearing on the issue of whether the arbitration agreements are valid. After finding that the parties entered valid arbitration agreements and that the Growers' claims are within the scope of the agreements, the district court also rejected the Growers' arguments that the arbitration clauses are unconscionable and violate the PSA. Accordingly, the district court granted Koch's motion to compel arbitration and dismissed the Growers' suit. The Growers subsequently filed this appeal.

## II

The Growers first argue that the district court erred in denying their motion to allow arbitration-related discovery. We review the discovery decisions of the district court for abuse of discretion, and we will affirm unless the discovery decision is arbitrary or clearly unreasonable.[1]

---

[1] *United States ex rel. Taylor-Vick v. Smith*, 513 F.3d 228, 232-33 (5th Cir. 2008).

The Federal Arbitration Act (FAA) "calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses."[2] It was "Congress's clear intent, in the [FAA], to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."[3]

On appeal, the Growers argue that "if the decision to deny arbitration-related discovery . . . resulted in the Growers suffering prejudice, the District Court has abused its discretion regardless of the FAA's preference for expeditious proceedings." The Growers contend that because they have the burden to prove that the agreements will require them to pay prohibitive arbitration costs and that the agreements were procured by fraud,[4] "it seems axiomatic" that they "must be given an opportunity to pursue discovery related to the issue that [they have] the burden to prove." The Growers maintain that this court should "adopt a rule that anytime a party bears the burden of proof, and is either trying to compel or defeat arbitration, then there is a compelling reason for discovery."

Such a broad rule would defeat the FAA's requirement of summary and speedy disposition of motions and petitions to enforce arbitration clauses. Furthermore, the Growers' argument ignores the reasons the district court denied their discovery requests. The district court correctly found that the requested information was either irrelevant, already within the personal knowledge of the Growers, or did not support a recognizable claim under Mississippi law. Therefore, arbitration-related discovery would not have helped the Growers to satisfy their burden of proof. Thus, the district court did not

---

[2] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983).

[3] *Id.* at 22.

[4] *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.").

abuse its discretion in denying the Growers' request for arbitration-related discovery.

## III

The Growers also argue that the district court erred in granting Koch's motion to compel arbitration. We review de novo the district court's ruling on Koch's motion to compel arbitration.[5]

In deciding whether a party may be compelled to arbitrate, a court must consider (1) whether there is a "valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement."[6] On appeal, the Growers argue that they did not enter into valid agreements to arbitrate their claims, the arbitration agreements are unenforceable because of procedural and substantive unconscionability, and the arbitration agreements violate the PSA.

## A

The Growers first argue that the arbitration agreements in the record were not properly authenticated and therefore are not evidence of a valid agreement to arbitrate between the parties. However, the Growers did not object to the authenticity of the agreements in district court; thus, they have waived this argument.[7] Furthermore, the Growers have not alleged any harm from Koch's alleged failure to properly authenticate the agreements, and they do not argue on appeal that they did not sign the arbitration agreements that are in the record.

---

[5] *See Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 277 (5th Cir. 2007).

[6] *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009).

[7] *See United States v. Monkey*, 725 F.2d 1007, 1011 n.4 (5th Cir. 1984) ("Objections to authenticity . . . are waived by a failure to raise them in the District Court, where the [opposing party] could have remedied any technical deficiencies.").

## B

Alternatively, the Growers argue that if the arbitration agreements were properly authenticated, the agreements are not valid because they were fraudulently procured. Under Mississippi law, a contract that is procured by fraud is void.[8] The party alleging fraud must prove, by clear and convincing evidence, the following elements:

> (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.[9]

The district court denied the Growers' request for a jury trial on the validity of the agreements and concluded that the Growers had failed to show that the arbitration agreements were voidable because the Growers had "not presented any evidence showing that Koch made false representations at the time the clauses were entered." On appeal, the Growers concede that Koch did not "actively" misrepresent the arbitration agreements. Instead, the Growers argue that Koch knew that the arbitration agreements would effectively deprive the Growers of any forum due to the excessive costs to have a dispute heard and that Koch's silence on this matter constitutes "passive fraud." The Growers contend that their failure to present any evidence to substantiate these allegations is due to the district court's refusal of their request to conduct arbitration-related discovery. However, even if the Growers were able to present evidence to substantiate their allegations, they still have not established that, under Mississippi law, they would be relieved of their contractual obligation to

---

[8] *Great S. Nat'l Bank v. McCullough Envtl. Servs., Inc.*, 595 So. 2d 1282, 1288 (Miss. 1992).

[9] *Id.* at 1288-89.

arbitrate if their allegations were true. The Mississippi Supreme Court "has never held that one party to an arm's-length contract has an inherent duty to explain its terms to the other. Duties to disclose or to act affirmatively, such as explaining the terms of a contract, do not arise in arm's length transactions or under ordinary standard of care."[10] Therefore, Koch's alleged silence is insufficient to establish that the agreements were fraudulently procured, and we hold that the arbitration agreements are valid.

## C

Next, the Growers argue that the agreements are unenforceable because the circumstances surrounding the formation of the agreements and the terms of the agreements are unconscionable, both procedurally and substantively, as a matter of law. The Supreme Court has held that generally applicable contract defenses, such as unconscionability, may be applied to invalidate arbitration agreements without contravening the FAA.[11] Under Mississippi law, "unconscionability has been defined as an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party."[12] There are "two types of unconscionability, procedural and substantive."[13]

Procedural unconscionability may be proven by demonstrating "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract

---

[10] *MS Credit Ctr., Inc. v. Horton*, 2004-CA-01699-SCT (¶ 32), 926 So. 2d 167, 177 (Miss. 2006).

[11] *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

[12] *Entergy Miss., Inc. v. Burdette Gin Co.*, 97-CA-00481-SCT (¶ 11), 726 So. 2d 1202, 1207 (Miss. 1998) (internal quotation marks omitted).

[13] *E. Ford, Inc. v. Taylor*, 2000-IA-01527-SCT (¶ 13), 826 So. 2d 709, 714 (Miss. 2002).

terms."[14]   In support of their position that the agreements are procedurally unconscionable, the Growers argue that they are not sophisticated business persons and have no knowledge of the workings of arbitration; the arbitration agreement was presented on a take-it-or-leave-it basis; the Growers are the weaker of the two parties; the Growers must rely on Koch to make a living; and Koch controls every aspect of the chicken operations.  Although the Growers assert that they did not know how arbitration worked when they signed the agreements, parties are charged with understanding the terms of contracts that they sign.[15]  Furthermore, the arbitration clause is written in plain English and conspicuous type, with portions of the clause written in all capital letters.  The clause clearly states that all contract disputes between the parties will be resolved through arbitration.   Moreover, even if Koch did present the agreements to the Growers on a take-it-or-leave-it basis, this alone would not render the agreements procedurally unconscionable:

> The fact that an arbitration agreement is included in a contract of adhesion renders the agreement procedurally unconscionable only where the stronger party's terms are unnegotiable and the weaker party is prevented by market facts, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.[16]

As the district court correctly concluded, the Growers have not shown that they were prevented from being able to contract with another party on more favorable

---

[14] *Id.*

[15] *See Cleveland v. Mann*, 2005-CA-00924-SCT (¶ 23), 942 So. 2d 108, 115-16 (Miss. 2006) ("Plaintiffs may not escape the agreement by simply stating [they] did not read the agreement or have it read to [them] or understand its terms.").

[16] *E. Ford, Inc.*, 2000-IA-01527-SCT (¶ 20), 826 So. 2d at 716; *see also Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992) ("Adhesion contracts are not automatically void.").

terms or to refrain from contracting at all. Accordingly, we hold that the arbitration agreements are not procedurally unconscionable.

"Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive."[17] An agreement may be substantively unconscionable when it is

> one-sided and one party is deprived of all the benefits of the agreement or left without a remedy for the other party's nonperformance or breach, a large disparity between cost and price or a price far in excess of that prevailing in the market price exists, or the terms bear no reasonable relationship to business risks assumed by the parties.[18]

The arbitration agreement in this case "contains no limitation of damages, no limitation on bringing claims, and no waiver of liability."[19] However, the Growers argue that the arbitration agreements are substantively unconscionable because "a Grower would have to pay up front fees in the amount of $27,000.00 to $29,000.00 to bring a claim under the terms of the agreement," and "there is uncontradicted proof that at least fourteen of the Growers cannot now afford to arbitrate and could not afford to arbitrate a dispute under the terms of the agreement at the time it was entered."

The Supreme Court has recognized "that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her . . . rights in the arbitral forum," but "[t]he 'risk' that [a litigant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration

---

[17] *E. Ford, Inc.*, 2000-IA-01527-SCT (¶ 14), 826 So. 2d at 714.

[18] *MS Credit Ctr., Inc. v. Horton*, 2004-CA-0199-SCT (¶ 29), 926 So. 2d 167, 177 (Miss. 2006) (internal quotation marks omitted).

[19] *See id.* at (¶ 38), 926 So. 2d at 179 (holding that the arbitration agreement was not substantively unconscionable because "[t]he agreement merely submits the question of liability to a forum other than the courts").

agreement."[20]   This court has previously noted that the party opposing arbitration has a burden of "providing some individualized evidence that they likely will face prohibitive costs in the arbitration at issue and that they are financially incapable of meeting those costs."[21] The district court concluded that the Growers had failed to provide any individualized evidence to support their assertion that they would be unable to meet the costs to arbitrate under the agreements.  The Growers argue that "it is quite puzzling that the District Court demands detailed proof" in light of the court's denial of their request for arbitration-related discovery.  However, while the Growers have provided their estimated costs of arbitration, the Growers have not provided any individualized information about their ability to pay those costs, and each Grower's individual ability to pay is within his or her personal knowledge and does not require discovery. Additionally, the provision requiring the losing party to bear the costs of arbitration "is not a basis to hold the Agreements unenforceable" as "the question of which party to the arbitration will ultimately prevail at arbitration is subject to speculation only."[22] Accordingly, we hold that the Growers have not shown that the costs associated with arbitration render the agreements substantively unconscionable.

## D

Finally, the Growers argue that the arbitration clause conflicts with the underlying purpose of the PSA.  Section 192 of the PSA prohibits "unfair, unjustly discriminatory, or deceptive practice[s] or device[s]."[23] The Growers' argument consists of two sentences: they argue that "Koch's purported

---

[20] *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90-91 (2000).

[21] *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 300 (5th Cir. 2004).

[22] *See Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 712 (5th Cir. 2002).

[23] 7 U.S.C. § 192(a).

arbitration agreement was procured in a deceptive manner, and its oppressive costs sharing provisions are patently unfair," and thus the arbitration clause conflicts with the "underlying purpose of the PSA." The district court found that the Growers had not shown that the arbitration clauses should be deemed unfair or deceptive under the PSA. On appeal, the Growers have not identified any evidence nor cited to any authority supporting their arguments that the arbitration agreements were procured in a deceptive manner or that the cost-sharing provisions are unfair. Accordingly, we hold that the Growers have not established that the arbitration clause conflicts with the PSA.

*     *     *

Therefore, for the reasons discussed above, we AFFIRM the district court's judgment.