COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MOUNTAIN VIEW HEALTH & REHABILITATION CENTER, INC., CREATIVE SOLUTIONS IN HEALTHCARE, INC., and LIDIA MOYA, | § | No. 08-23-00033-CV |
| | § | Appeal from the |
| | § | 210th Judicial District Court |
| Appellants, | § | of El Paso County, Texas |
| v. | § | (TC# 2022DCV1585 ) |
| MARY HORTON KEELE, | § | |
| Appellee. | § | |
| | § | |

## MEMORANDUM OPINION

This is an interlocutory appeal from an order denying a motion to compel arbitration filed by Appellants Mountain View Health & Rehabilitation Center, Inc., Creative Solutions in Healthcare, Inc., and Lidia Moya (collectively, Premises Parties) seeking to compel Appellee Mary Horton Keele (Keele) to arbitrate her premises liability and negligence claims against them. For the reasons set forth below, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Keele's lawsuit

Keele filed a lawsuit against the Premises Parties, alleging that on or about May 26, 2020,

she "was on the premises owned, operated and controlled by Defendants located at 1600 Murchison Dr., El Paso, Texas 79902, as an employee when she walked into a patient room and slipped and fell as a result of water on the floor."[1]

Keele brought a claim for "premise liability," contending that "[w]hile upon Defendants premises, Plaintiff suffered bodily injuries as a direct result of the fall proximately caused by a dangerous condition, which Defendant knew, or in the exercise of ordinary care, should have known existed." She further alleged that "Defendant, its agents, servants and employees negligently caused and/or negligently permitted such condition to exist and/or negligently failed to appropriately warn Plaintiff of the condition of the premises, despite the fact that Defendants, its agents, servants and employees knew, or in the exercise of ordinary care, should have known of the existence of the condition and that there was a likelihood of someone being injured as happened to Plaintiff." In the alternative, Keele alleged that the Premises Parties were negligent in that they owed a duty of care to Keele, which they breached, and which in turn was the "proximate cause of the injury and the resulting damages to Plaintiff."

Keele further alleged that Defendant Mountain View Rehabilitation Center, Inc. "had a non-delegable duty to provide a safe workplace to its employees" as required by the Labor Code, and that "Defendant failed to ensure a safe workplace for Plaintiff." Keele additionally alleged in this same paragraph that: "Defendant failed to become a subscriber under the Worker's Compensation Act of this State." Keele also included a series of paragraphs in which she alleged that the Premises Parties were negligent in a variety of ways, including their failure to provide her

---

[1] Keele also named "Encore Health Care, LLC" as a fourth defendant. Encore was a party to the motion to compel arbitration, but is not a party to this appeal.

2

with a safe workplace and their failure to properly train and supervise their employees.[2]

In her request for damages, Keele alleged that she had "undergone medical treatment including surgical procedure, all of which were brought about by Defendants' negligence in failing to adhere to its non-delegable duty to provide a reasonably safe workplace." Keele sought compensatory damages within the limits of the trial court's jurisdiction, and further sought an award of punitive damages, asserting that the Premises Parties were liable for "gross negligence."

## B. The motion to compel arbitration

After filing answers to Keele's petition, the Premises Parties filed a joint motion to dismiss, or in the alternative, to compel arbitration, alleging that Keele had signed two documents when she was initially hired on September 13, 2018, expressing her agreement to arbitrate any employment-related claims she might have. The motion referred to all "defendants" as being Keele's employer and referred to the documents that Keele signed as being with all "defendants" as well. The Premises Parties attached both documents as exhibits to the motion and argued that the documents clearly established the "existence of a binding arbitration agreement and that [Keele's] claims clearly fall within the scope of that agreement."

The first document was entitled "Dispute Resolution and Arbitration Policy" (the Arbitration Policy), and stated: "It is the policy of the facility that the initiation and/or continuation of employment with the facility after notice of this arbitration policy constitutes assent, acceptance, consent, and consideration for this agreement to arbitrate, both during the time of employment and after termination." The Arbitration Policy further specified that claims subject to arbitration would

---

[2] Keele's pleading did not separately describe Appellant Moya's individual participation or involvement in the alleged events, although it did identify Moya as "the DOA of Mountain View Rehabilitation Center, Inc." Moya is identified as the "Director of Nursing—Mountain View Health & Rehabilitation Center" in Creative Solutions' discovery responses.

include "claims for negligence, gross negligence, on-the-job injury; all lawsuits, claims, issues and disputes connected to, related to, arising from, accruing from and/or arising out of the employment relationship between the employee and the facility." The Arbitration Policy further stated that arbitration would be the "exclusive method" for resolving such claims between the employee and the facility, and would be "mutually binding" on them as well as on "their successors, subsidiaries, affiliates, assigns, beneficiaries, heirs, children, spouses, parents and legal representatives." The Arbitration Policy, however, did not provide a definition of the term "facility."

The second document was entitled "Receipt, Safety, Pledge and Arbitration Acknowledgment," and stated that by her signature, Keele was acknowledging receipt of a "Summary Plan Description" (SPD Acknowledgment). In addition to stating that she was agreeing to follow various "safety rules of the Company" and to notify her supervisor in the event that she was injured on the job, the SPD Acknowledgment stated:

> I also acknowledge that this SPD includes a mandatory company policy requiring **that claims or disputes relating to the cause of an on-the-job injury (that cannot otherwise be resolved between the Company and me) must be submitted to an arbitrator,** rather than a judge and jury court. I understand that by receiving this SPD and becoming employed (or continuing my employment) with the Company at any time on or after May 1, 2009. I am accepting and agreeing to comply with these arbitration requirements." (emphasis in the original).

The SPD Acknowledgment did not define the term "Company."

Both documents were hand-signed and dated 9/13/2018 by Keele, who was identified as the "employee" in the signature blocks. Both documents were hand-signed and dated by another individual—Savannah Hayes—that same day. The Arbitration Policy identified Ms. Hayes as the "HR Coord. or Administrator" on the signature block but did not identify the entity that employed her. The SPD Acknowledgment similarly identified the Ms. Hayes as the "Facility HR or Admin." on the signature block but also failed to identify the entity that employed her.

4

In opposing the motion to compel arbitration, Keele argued that the Premises Parties did not establish the existence of a valid and enforceable arbitration agreement, as there was no "meeting of the minds" regarding the entity with whom she was agreeing to arbitrate, given the failure to identify the other party to the agreement in the documents. In her opposition, however, Keele appeared to acknowledge that any documents she signed on the day she was hired were solely with Creative Solutions, and she claimed that Mountain View therefore had no right to enforce the arbitration agreement against her. Keele attached an affidavit in which she explained that she had previously worked for Creative Solutions in another Texas city and she sought to be rehired by them when she moved to El Paso. Although she acknowledged she applied for the job at Mountain View and worked there and was injured there, she maintained a belief that Creative Solutions was her employer and any agreements she had were with Creative Solutions rather than Mountain View. According to her affidavit, she did not realize Mountain View was claiming to be her employer and/or was claiming she had agreed to arbitrate her claims with it, until her attorney informed her of the claims made in the motion to compel arbitration. Although Keele stated that she believed Creative Solutions—rather than Mountain View—was her employer and Creative Solutions had given her the documents to sign, she argued that Creative Solutions had created a question of fact regarding its right to enforce the agreement by stating in its discovery responses that it was not a "proper party" to the litigation.

In her opposition, Keele also raised several affirmative defenses to enforcement of the arbitration agreement, contending: she did not receive notice of the agreement; the agreement was substantively unconscionable due to the fees she would be required to pay to participate in the arbitration proceeding—mistakenly referring to the fee set for commercial arbitration by the AAA; and the agreement was procedurally unconscionable, as she was given a "stack of documents to

sign and immediately return" in order to obtain employment, no one explained the agreement to her, and the "Defendants took advantage of [her] disparate bargaining ability" in requiring her to sign the documents.[3]

Keele asserted it was necessary for the trial court to hold a "Tipps" evidentiary hearing at which the Premises Parties would be required to demonstrate that they met their burden of establishing the arbitration agreement's validity and enforceability.[4]

The Premises Parties did not file a reply to Keele's response to the motion to compel.

C.   **The trial court's ruling**

The trial court held a Zoom hearing on the motion to compel arbitration, but none of the parties provided any additional evidence and instead only made legal arguments based on the existing record. Following the hearing, the trial court denied the motion to compel arbitration without specifying its reasons. This appeal followed.

---

[3] Keele no longer relies on any of these arguments in her appellate briefing, and we agree with the Premises Parties that the arguments lack merit. First, as the Premises Parties pointed out in the trial court without contradiction, Keele mistakenly believed that the American Arbitration Association (AAA), which was the named arbitrator in the Arbitration Policy, would charge her the fee for commercial arbitration ($5,100), when in fact the AAA's fee for arbitration under the employment workplace schedule is $300. Second, the fact that there may have been inequality in the parties' bargaining power does not, standing alone, support a finding of procedural unconscionability in the absence of any allegations of fraud or misrepresentation, which Keele did not allege. *See APC Home Health Services, Inc. v. Martinez*, 600 S.W.3d 381, 395 (Tex. App.—El Paso 2019, no pet.) (recognizing that "unequal bargaining power does not establish grounds for invalidating an arbitration agreement absent a well-supported claim that the agreement resulted from the sort of fraud or overwhelming economic power that would provide grounds for revocation of any contract"); *see also In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (per curiam) ("Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms."). We further note that Keele complains for the first time on appeal about the cost-shifting provision in the Arbitration Policy that gives the arbitrator the discretion to grant attorney fees to the prevailing party, which she contends on appeal renders the agreement substantively unconscionable. Here, because Keele failed to raise this issue in the trial court, we are not able to consider it on appeal. *See APC Home Health Services Inc.*, 600 S.W.3d at 389 (an appellate court is "limited to considering the grounds presented to the trial court by the party resisting arbitration").

[4] *See Jack B. Anglin Co. Inc. v. Tipps*, 842 S.W.2d 266 (Tex. 1992) (when a factual issue exists that requires resolution before a trial court may determine whether to grant a motion to compel arbitration, the court must hold an evidentiary hearing to resolve the issue).

6

In one global issue, the Premises Parties contend the trial court erred by denying their motion to compel arbitration, arguing: (1) they established that a valid and enforceable arbitration agreement existed, to which both parties assented; and (2) Keele failed to meet her burden of establishing her affirmative defenses to arbitration.

## APPLICABLE LAW AND STANDARD OF REVIEW

### A. Applicable law

Arbitration is a contractual proceeding by which the parties, in order to obtain a speedy and inexpensive final disposition of disputed matters, consent to submit the controversy to arbitrators for resolution. *See In re Phelps Dodge Magnet Wire Co.*, 225 S.W.3d 599, 605 (Tex. App.—El Paso 2005, no pet.) (citing *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992)). A party seeking to compel arbitration has the burden to prove that a valid arbitration agreement exists and the claims raised fall within the agreement's scope. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011).

Courts determine whether an enforceable arbitration agreement exists by applying state contract law principles. *See In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005). An employer attempting to enforce an arbitration agreement has the burden to show the agreement meets all requisite contract elements. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003); *see also Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 132 (Tex. App.—El Paso 2018). This includes establishing that the employee consented to the agreement. *See Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 204 (Tex. 2021) (recognizing that because arbitration is a matter of consent, not coercion, the question of whether a valid arbitration agreement exists includes proving the other

party consented to the agreement); *see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, (1989) (recognizing that arbitration "is a matter of consent, not coercion"). Under standard contract principles, the fact that a party has signed an arbitration agreement creates a "strong presumption" that the party has consented to its terms. *Wright v. Hernandez*, 469 S.W.3d 744, 756–57 (Tex. App.—El Paso 2015, no pet.) (citing *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 208-10 (Tex. App.—El Paso 2004, no pet.)); *see also Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013) ("Typically, a party manifests its assent by signing an agreement."). However, "despite strong presumptions that favor arbitration, a valid agreement to arbitrate is a settled, threshold requirement to compel arbitration." *Kmart Stores of Tex. L.L.C. v. Ramirez*, 510 S.W.3d 559, 564 (Tex. App.—El Paso 2016) (quoting *In re Estate of Guerrero*, 465 S.W.3d 693, 699 (Tex. App.—Houston [14th Dist.] 2015, pet. denied)).

If the moving party meets its burden to establish a valid agreement, the burden shifts to the party opposing arbitration to raise a defense against its enforcement. *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (per curiam). As with any other contract, a party seeking to avoid being bound by an arbitration agreement may raise various affirmative defenses, such as "fraud, unconscionability or voidness under public policy," but has the burden of proving any such defense. *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 500 (Tex. 2015) (citing *In re Poly–Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008)).

**B.  Standard of review**

We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *APC Home Health Services, Inc. v. Martinez*, 600 S.W.3d 381, 389 (Tex. App.—El Paso 2019, no pet.) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009)). When a trial court improperly denies a party's right to arbitrate pursuant to a valid and enforceable

arbitration agreement, the court has abused its discretion. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (per curiam) (orig. proceeding) (citing *In re Halliburton Co.*, 80 S.W.3d at 573). The trial court's determination of whether an arbitration agreement is valid and enforceable is a legal question subject to de novo review. *J.M. Davidson, Inc.*, 128 S.W.3d 227; *see also Casa Ford, Inc. v. Warner*, 656 S.W.3d 816, 820 (Tex. App.—El Paso 2022, no pet.)*.* An appellate court may uphold the trial court's decision on a motion to compel arbitration on any appropriate legal theory urged below. *APC Home Health Servs.*, 600 S.W.3d at 389.

### WHETHER THE PREMISES PARTIES MET THEIR BURDEN OF ESTABLISHING A VALID ARBITRATION AGREEMENT

In addressing whether the Premises Parties met their burden to establish a valid and enforceable arbitration agreement, we consider two fundamental requirements: authentication and a meeting of the minds.

#### A. Authentication

The first issue we consider is whether the Arbitration Policy and the SPD Acknowledgment the Premises Parties attached to their motion to compel arbitration were properly authenticated, and if not, whether lack of authentication supports the trial court's denial of the motion. We agree with Keele that the Premises Parties had the burden of ensuring that any documents they attached in support of their motion were properly authenticated for the documents to be admissible as evidence. *See Ridge Nat. Res.*, 564 S.W.3d at 122 (recognizing that a party moving to compel arbitration bears the initial evidentiary burden of proving the existence of a valid arbitration agreement, which includes "threshold evidentiary issues such as authenticity"); *Kmart Stores of Tex.*, 510 S.W.3d at 567-68 (discussing the need to authenticate documents attached to a motion to compel arbitration as a prerequisite to admissibility).

9

The authentication requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 813 (Tex. App.—El Paso 2014, no pet.) (citing TEX. R. EVID. 901(a)). Texas Rule of Evidence 901(b) provides a non-exclusive list of methods for authenticating a document, including presenting testimony of a witness with knowledge; providing either an expert or nonexpert opinion regarding the authenticity of a party's signature on the document; or any other "method of authentication or identification allowed by a statute or other rule prescribed under statutory authority." TEX. R. EVID. 901(b). However, as we have previously recognized, "[s]imply attaching a document to a pleading neither makes the document admissible as evidence, dispenses with proper foundational evidentiary requirements, or relieves a litigant of complying with other admissibility requirements." *Wright*, 469 S.W.3d at 751 (citing *United Rentals, Inc.*, 445 S.W.3d at 814); *see also Guerrero*, 465 S.W.3d at 703 (recognizing same); *Constant v. Gillespie*, No. 05-20-00734-CV, 2022 WL 1564555, at *6 (Tex. App.—Dallas May 18, 2022, no pet.) (mem. op.) (holding, as a matter of law, that movant's "mere attachment of the Purported Agreements as exhibits to his motion and supplemental motion, without more, submitted no evidence of a valid arbitration agreement to the trial court").

As the Premises Parties point out, Keele did not raise this issue in the trial court. However, when, as here, there is a complete absence of authentication, such a deficiency is considered a defect of substance that may be raised for the first time on appeal.[5] *Houle v. Capital One Bank*

---

[5] As we recognized in *Houle*, there is a distinction between defects in the form of an affidavit authenticating a document—which must be raised in the trial court to be preserved—and situations in which there is a complete lack of authentication—which can be raised for the first time on appeal. *See Houle v. Capital One Bank (USA), N.A.*, 570 S.W.3d 364, 369–70 (Tex. App.—El Paso 2018, pet. denied) (citing *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (recognizing the distinction between substantive and formal defects in authentication in terms of error preservation)). This is because the "complete failure to authenticate the exhibits renders the evidence incompetent and amounts to a substantive defect that is not waived by the failure to preserve error in the trial court." *Brown v. Tarbert,*

*(USA), N.A.*, 570 S.W.3d 364, 369–70 (Tex. App.—El Paso 2018, pet. denied); *see also Guerrero*, 465 S.W.3d at 706–07 ("[a] complete absence of authentication is a defect of substance that is not waived by a party failing to object and may be urged for the first time on appeal"); *Perkins v. Crittenden*, 462 S.W.2d 565, 568 (Tex. 1970) (reversing summary judgment because an unverified copy of a promissory note was offered as summary-judgment evidence, even though the complaint was raised for the first time on appeal); *Mansions in the Forest L.P., v. Montgomery Country*, 365 S.W.3d 314, 317 (Tex. 2012) (reaffirming holding in *Perkins*).

We nevertheless find that Keele waived this issue, as she made several statements in the trial court, both in her affidavit and in her pleadings, acknowledging that she signed the documents in question but claiming she did not understand the import of the documents and/or who the other signatory was.[6] In addition, during the hearing on the motion to compel arbitration, the Premises Parties' attorneys repeatedly asserted that Keele's signature on the documents was demonstrative of her agreement to arbitrate, and Keele's attorney never denied that Keele's signature was on the documents. Instead, Keele's argument at the hearing centered almost exclusively on her contention that there was no "meeting of the minds" with respect to the entity with whom Keele was agreeing to arbitrate when she signed the documents.

Simply put, when, as here, a party has acknowledged signing a document, she waives the

---

*LLC*, 616 S.W.3d 159, 170 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (C.J. Frost, concurring) (citing *In re Estate of Guerrero,* 465 S.W.3d 693, 705, 705-08 (Tex. App.–Houston [14th Dist.] 2015, pet. denied)).

[6] In her affidavit, Keele acknowledged she signed the documents in question but complained that she "would not have signed" either document "if it had been explained to me what arbitration was." In addition, referring to the Arbitration Policy, Keele complained in her affidavit that she did not receive "advice from [her] lawyer at any point prior to *signing* this document" (emphasis added). In other words, she admitted she signed the documents but contended she simply did not understand their nature or import. Keele's opposition to the motion to compel similarly acknowledged that the Arbitration Policy "contain[ed her] signature" and that she was "required" to sign both documents.

right to contest its authenticity.[7] *See Gracepoint Holding Co., LLC v. FJR Sand, Inc.*, No. 01-19-00574-CV, 2020 WL 61594, at *4 (Tex. App.—Houston [1st Dist.] Jan. 7, 2020, no pet.) (mem. op.) (where plaintiff admitted in her pleadings that she had entered into the agreement containing the arbitration provision, plaintiff waived her right to challenge the agreement for lack of authenticity); *see also Bell v. Koch Foods of Miss., LLC*, 358 Fed. Appx. 498, 501 (5th Cir. 2009) (per curiam) (overruling an appellate complaint concerning an alleged lack of authentication of arbitration agreements when the party opposing arbitration did not object to their authenticity in the trial court and did not argue that the agreements had not been properly signed); *In re Whitfield*, 115 S.W.3d 753, 755-56 (Tex. App.—Beaumont 2003, no pet.) (relying on a party's admission that arbitration agreements existed in finding that the party waived her right to challenge their authenticity).

We therefore assume that Keele did in fact sign the documents in question and the exhibits in question were genuine copies.

## B. Meeting of the minds

We next turn to the pivotal question of whether the Premises Parties met their burden to establish that there was a "meeting of the minds" regarding the identity of the party or parties with whom Keele was agreeing to arbitrate her claims, such as to render the arbitration agreement valid and enforceable. We conclude that the Premises Parties failed to meet this burden but are nevertheless entitled to compel arbitration under the Texas Supreme Court's holding in *In re*

---

[7] We recognize that if Keele had denied signing the agreement, we would reach a different result, as the mere fact that her signature purportedly appeared on the document, without more to authenticate it, would not be sufficient to find the document admissible as evidence. *See United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 814 (Tex. App.—El Paso 2014, no pet.) (recognizing that although a party's signature on a written contract is strong evidence that the party unconditionally assented to its terms, if the party denies she signed the agreement, there must be some evidence admitted in the trial court to support a finding that the signature was authentic). However, as set forth above, Keele did not challenge the authenticity of her signature or the existence of the agreement.

*Macy's Tex., Inc.*, 291 S.W.3d 418 (Tex. 2009).

**(1)  Applicable law**

As explained above, because an arbitration agreement is a creature of contract, the party "attempting to enforce an arbitration agreement must show the agreement meets all requisite contract elements" in accordance with state law. *J.M. Davidson*, 128 S.W.3d at 228. Under Texas law, the elements needed to form a valid and binding contract are "(i) an offer; (ii) an acceptance in strict compliance with the terms of the offer; (iii) a meeting of the minds; (iv) each party's consent to the terms; and (v) execution and delivery of the contract with the intent that it be mutual and binding." *Lucchese Boot Co. v. Rodriguez*, 473 S.W.3d 373, 385 (Tex. App.—El Paso 2015, no pet.) (citing *Karns v. Jalapeno Tree Holdings, L.L.C.*, 459 S.W.3d 683, 692 (Tex. App.—El Paso 2015, pet. denied)); *see also Ridge Nat. Res.*, 564 S.W.3d at 119–20 (recognizing same elements necessary for formation of valid arbitration agreement). Therefore, as with any other contract, a "meeting of the minds" is necessary to form a binding arbitration agreement. *See Lucchese Boot Co. v. Licon*, 473 S.W.3d 390, 400 (Tex. App.—El Paso 2015, no pet.) (citing *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008)); *see also Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 585-87 (Tex. 2022) (per curiam) (recognizing the need for a "meeting of the minds" on all essential terms in an arbitration agreement).

The term "meeting of the minds" refers to the parties' "mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *Izen v. Comm'n For Lawyer Discipline*, 322 S.W.3d 308, 318 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *see also Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 455 (Tex. App.—Dallas 2012, pet. denied) (recognizing that "[t]he term 'meeting of the minds' refers to the parties' mutual understanding and assent to the expression of their agreement"); *see also Gutierrez v. Rios*, 621

S.W.3d 907, 913 (Tex. App.—El Paso 2021, no pet.) (citing *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (referring to the need for the parties to reach a meeting of the minds on the essential terms of the contract as "mutual assent")). "Although often treated as a distinct element, meeting of the minds is a component of both offer and acceptance measured by what the parties said and did and not on their subjective state of mind." *Rodriguez*, 473 S.W.3d at 385–86; *see also Domingo v. Mitchell*, 257 S.W.3d 34, 40 (Tex. App.—Amarillo 2008, no pet.) (recognizing that a "meeting of the minds" is not an independent element of a valid contract but is instead "a mutuality subpart of the offer and acceptance elements" or "a mutual understanding and assent to the expression of the parties' agreement").

As we have previously recognized, the question of whether the parties have reached a "'meeting of the minds,' and therefore acceptance of an offer, is measured objectively according to what the parties said and did" and not based on their "subjective thoughts and beliefs." *Franco*, 346 S.W.3d 605, 608; *see also Lucchese Boot Co.*, 473 S.W.3d at 385-86 (recognizing same).

**(2)    Whether the Premises Parties were parties to the arbitration agreement**

As noted above, Keele does not deny that she signed the Arbitration Policy or the SPD Acknowledgment; instead, she contends the documents are not enforceable, as neither document reflects the identity of the other signatory. Keele points to the general principle that "[i]n order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook." *Lucchese Boot Co.*, 473 S.W.3d at 386 (citing *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)). In other words, the contract must address all essential and material terms in a sufficiently definite manner to confirm that both parties actually intended to be contractually bound and understand the parties' obligations. *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016). And in turn, Keele contends that the identity of

14

the contracting parties is a material term, and if the identity of the contracting parties cannot be determined from the face of the contract, the contract fails. *See, e.g., McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013) (per curiam) (recognizing that the identity of the parties to the sale, i.e., the transferor and transferee, is a material term in a contract for the sale of real estate). Thus, Keele concludes that because neither document identified who the other contracting party was, neither one is enforceable.

The Premises Parties respond that while not expressly identifying the other contracting party, both the Arbitration Policy and the SPD Acknowledgement made it clear Keele was agreeing to arbitrate any employment-related claims with her employer. In turn, they contend that Keele did not cite any authority, and they have not found any, to support the proposition that "in order for an arbitration agreement to be enforceable the employee must subjectively understand the exact name of her employer." And they contend that "there is no dispute that [Keele] signed an arbitration agreement with *her employer* and as such whether she was correct on the name of her employer is immaterial because her agreement is to arbitrate disputes with her employer, which is precisely what [the Premises Parties] asked the court to order."

The Texas Supreme Court addressed a similar situation in a case where an employee working at a Macy's store was injured on the job and filed a lawsuit naming Macy's Texas, Inc. as her employer. *In re Macy's Tex., Inc.*, 291 S.W.3d 418, 419 (Tex. 2009) (per curiam). There, the defendant moved to compel arbitration, contending the employee had signed an arbitration agreement that bound her to arbitrate employment-related injury claims. *Id*. In response, while acknowledging she signed the agreement, the employee argued it did not specify that she was required to arbitrate with Macy's Texas, Inc., and instead only stated she was agreeing to arbitrate with the "Company." *Id.* And, as here, the employee pointed out that the agreement did not

15

expressly define the term "Company."

The agreement in *Macy's* further stated that "[a]ll Texas employees of Federated Department Stores, Inc, Macy's West, Inc., and Federated Systems Group, Inc. will be covered by this program [and] [r]eferences to the word 'Company' in this booklet will mean your particular employer." *Id.* Although the defendant provided an affidavit purporting to explain the relationship between the various Macy's entities, the court found it insufficient, explaining that "[w]hile the trademark laws make it hard to believe Macy's South or Macy's West are not affiliated with Macy's Inc., it was the defendant's burden to prove they were," and "the affidavit was conclusory rather than conclusive, failing to establish any basis for the affiant's knowledge of corporate structure or attach any supporting documents whatsoever." *Id*. The court further noted that "even if [the various Macy's entities] were affiliates, treating affiliates as one entity for purposes of arbitration may be inconsistent with their separate creation." *Id.*

The court nevertheless rejected the employee's argument that the arbitration agreement was not valid or enforceable. *Id.* In particular, the court noted that the employee provided "no explanation [for] why she would agree with anyone other than her employer on a health-benefits plan or arbitration for on-the-job injuries." *Id.* at 420. And the court further found it significant that the suit alleged a "failure to provide proper equipment and a safe workplace—both nondelegable duties owed by [an] employer." *Id.* (citing *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 215 (Tex. 2008)). In the end, the court held that because the employee had "agreed to arbitrate with her employer and purported to sue her employer, she [could not] avoid arbitration by raising factual disputes about her employer's correct legal name." *Id.* In so holding, the court noted that while the arbitration agreement was "certainly nonspecific" as to the identity of the employer, such generality "serve[d] to avoid the kind of disputes about corporate divisions and affiliates that [the

16

employee] trie[d] to raise." *Id* at 419.

Here, like the defendant in *Macy's*, the Premises Parties seek to compel arbitration under documents Keele signed as the "employee," which contain an agreement to arbitrate all "work-related" claims with a non-specific entity referred to as "the company" or "facility." However, unlike the defendant in *Macy's*, the Premises Parties did not offer an affidavit or other evidence to show that any of them were Keele's employer.

Instead, as to Defendant Mountain View Health & Rehabilitation Center, Inc., the Premises Parties argue that:

> [Keele's affidavit] stated that she went to the Mountain View Facility located at 1600 Murchison El Paso, Texas, to apply for a job and fill out the necessary paperwork. . . . According to her pleadings, the injury she alleges she suffered while she was an employee occurred at 1600 Murchison Dr. El Paso, Texas, the location of Mountain View. . . . [Keele]'s pleadings also specifically allege that "Defendant Mountain View" had a duty to provide a safe workplace to its employee. . . . As such, [Keele]'s statements and pleadings establish that she knew her employer was in fact Mountain View and that she was entering into an agreement to arbitrate any workplace injury with Mountain View.

But this argument fails to address a crucial statement in Keele's affidavit, namely, that at the time she signed the documents in question—i.e., when a meeting of the minds would need to have occurred—she believed she was applying to work for "Creative Solutions In Healthcare but known as Mountain View Health & Rehabilitation Center, Inc." In other words, Keele believed Mountain View was simply a trade name for Creative Solutions. While it is true that Keele's pleading identifies Mountain View as her employer, the pleading does not suggest anything about who Keele believed her employer was at the time she signed the documents in question and thus cannot, as the Premises Parties contend, "establish that she knew her employer was in fact Mountain View and that she was entering into an agreement to arbitrate any workplace injury with Mountain View."

17

Further, as to Defendant Creative Solutions in Healthcare, Inc., the Premises Parties argue:

> [T]he arbitration agreement expressly states that "this agreement to arbitrate applies to . . . all lawsuits . . . , claims, issues and disputes that the employee may now have or may in the future have against the facility and/or its parents, subsidiaries, affiliates, operators, boards, committees, executives, officers, partners, shareholders, directors, faculty, staff, employees and agents (collectively referred hereafter as 'the facility.')". . . As such, even if [Keele] believed that she was entering into an agreement with Creative, and assuming arguendo that belief had to be correct under the law, that arbitration agreement would apply to both Creative and Mountain View.

That is, if we understand correctly, the Premises Parties contend that Creative Solutions is a party to the arbitration agreement because it is Mountain View's parent, subsidiary, affiliate, or operator. But the Premises Parties fail to point to any evidence in the record to support this contention, nor do they identify the particular type of relationship allegedly involved.[8] Nor do the Premises Parties cite authority holding, for example, that any party named in a lawsuit who claims to fall under a related-parties clause in a relevant arbitration agreement is entitled to be taken at their word.

In addition, as to Defendant Lidia Moya, her name appears in the Premises Parties' initial appellate brief exactly twice—in the style and in the list of parties—and in their reply brief only once—in the style. That is, the Premises Parties present no argument, no evidence, and no authority to support granting Moya any form of relief in this appeal.

In sum, the Premises Parties have failed to meet their burden to show that a valid arbitration agreement exists between Keele and any of the Premises Parties. However, under *Macy's*, we must

---

[8] We only see evidence in the record of statements by Creative Solutions in discovery that it "is not a healthcare institution and did not provide medical care or treatment to Mary Horton Keele at any time, and therefore is not a proper party" and that it "denies any negligence with regard to the care and treatment rendered to Mary Horton Keele," suggesting it misunderstood the nature of Keele's claims, which are plainly based on premises liability, not healthcare liability. At the hearing on the motion to compel arbitration, Keele's counsel stated: "By their very own disclosures, they're saying Creative Solutions is not a proper party. And my client is saying, I thought these were Creative Solutions' documents. If they had not said that, Your Honor, I would not be here."

next consider Keele's pleading.

Like the employee's pleading in *Macy's*, Keele's pleading implicates claims brought by an employee against an employer, alleging that "[o]n or about May 26, 2020, Plaintiff was on the premises owned, operated and controlled by Defendants . . . *as an employee* when she walked into a patient room and slipped and fell" (emphasis added). Further, specifically as to Mountain View, Keele's pleading alleges "Defendant had a non-delegable duty to provide a safe workplace to its employees"; "Defendant failed to ensure a safe workplace for Plaintiff"; and "Defendant failed to become a subscriber under the Worker's Compensation Act of this State." In addition, as to all three Premises Parties, Keele's pleading alleges "These acts or omissions [by Defendants] were a proximate cause of the injuries and damages to Plaintiff: . . . [f]ailure to properly train, educate, instruct, and supervise [Keele] in the performance of her duties . . . [and] [f]ailing to enforce their rules, regulations, and guidelines to safeguard…employees such as [Keele]." In other words, Keele's pleading identifies all three defendants as her employer and alleges claims against them in that capacity.

As a result, in the end, we conclude under *Macy's* that because Keele agreed to arbitrate with a nonspecific employer then filed suit against specific parties alleging they were all her employer, she cannot now avoid arbitration with these parties by raising factual disputes about her employer's correct legal name. *Macy's*, 291 S.W.3d at 420; *see also SSC Wimberley Operating Co., LLC v. Goodman*, 665 S.W.3d 729, 737 (Tex. App.—San Antonio 2023, no pet.) (holding that all six defendants were entitled to compel arbitration under an arbitration agreement between the plaintiff and an unspecified employer, in part because the plaintiff's pleading identified all

19

defendants either as her employer or as an employee of her employer).[9]

We reject Keele's other arguments for the reasons explained above in footnote three.

Appellants' Issue One is sustained.

## CONCLUSION

We reverse the trial court's order denying the motion to compel arbitration and remand this matter to the trial court to enter an order consistent with this opinion.


LISA J. SOTO, Justice

October 6, 2023

Before Rodriguez, C.J., Palafox, Soto, JJ.
Palafox, J., dissenting

---

[9] The dissent views *Macy's* as distinguishable in that the arbitration agreement there "identified 'the Federated Department Stores, Inc.,' as a party to the contract," "further defined 'the Company,' as inclusive of 'your particular employer,'" and "[m]oreover . . .detailed that employees of three corporate entities would be covered by its terms." In the end, however, *Macy's* focused on the fact that under the agreement, "'the Company' would mean 'your particular employer'"—language the Supreme Court found to be nonspecific, but not fatally so: "This definition is certainly nonspecific, but it serves to avoid the kind of disputes about corporate divisions and affiliates that [the plaintiff] tries to raise here." 291 S.W.3d 419 (Tex. 2009). Crucially, *Macy's* expressly crafted an exception to the general rule stated in *Merrill Lynch*, the case relied on by the dissent for the proposition that an agreement to arbitrate with an entity does not extend to its affiliates. *Id*. at 419-20 (*distinguishing In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007)). That is, *Macy's* held: "As [the plaintiff] agreed to arbitrate with her employer and purported to sue her employer, she cannot avoid arbitration by raising factual disputes about her employer's correct legal name." *Id*. at 420. That is precisely the situation Keele was in by unambiguously identifying Mountain View, Creative Solutions, and Moya as her employer.

20